IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANGELA D. BELL-JAMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:15-cv-156-MHT-WC |
| ) | |
| WORKFORCE WALKER ) | |
| PERSONNEL, LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ | |
| ANGELA D. BELL-JAMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:15-cv-485-WKW-WC |
| ) | |
| WORKFORCE WALKER ) | |
| PERSONNEL, LLC, ) | |
| ) | |
| Defendant. ) | |

ORDER AND RECOMMENDATION
OF THE MAGISTRATE JUDGE

The plaintiff filed these two lawsuits naming the same defendant and complaining about the same series of events. *Compare* Am. Compl. (Doc. 6), Civ. No. 2:15-cv-156-MHT-WC (filed Mar. 20, 2015), *with* Compl. (Doc. 1), Civ. No. 2:15-cv-485-MHT-WC (filed July 8, 2015). The cases were consolidated, *see* Order (Doc. 8), and both cases have been referred to the undersigned Magistrate Judge for recommendation on all

pretrial matters.  Because Plaintiff has requested leave to proceed *in forma pauperis* in both cases, the complaints in each case are before the undersigned for screening pursuant to 28 U.S.C. § 1915(e).  *See Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (applying § 1915(e) in non-prisoner action).  That statute instructs the court to dismiss any action wherein it is determined that an *in forma pauperis* applicant's suit is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief."  § 1915(e)(2)(B)(i)-(iii).

After an initial review of Plaintiff's complaint in the first-filed action, the undersigned Magistrate Judge entered an Order (Doc. 5) explaining why Plaintiff's complaint, which consisted of one sentence describing the basis of Plaintiff's claims of race and disability discrimination, was patently insufficient to satisfy the pleading standard of Rule 8(a) of the Federal Rules of Civil Procedure.  Rather than recommending summary dismissal of Plaintiff's complaint, the undersigned ordered Plaintiff to amend her complaint and provide sufficient factual allegations to enable the court to discharge its screening obligation under § 1915(e) and to allow, if appropriate, Defendant to respond to Plaintiff's allegations.  Plaintiff filed her Amended Complaint (Doc. 6) on March 20, 2015.  The amended complaint consists of two narrative paragraphs and photocopies of what appear to be records collected during the investigation of Plaintiff's Equal Employment Opportunity Commission ("EEOC") complaint over which Plaintiff has scrawled several handwritten notes.[1]  For the

---

[1] The bulk of the two narrative paragraphs comprising Plaintiff's amended complaint do not, as the court directed, clearly and succinctly state when and how Defendant allegedly discriminated against Plaintiff.

2

following reasons, the undersigned Magistrate Judge concludes that Plaintiff has failed to state any claim upon which relief could be granted and, consequently, recommends that Plaintiff's complaints be dismissed pursuant to § 1915(e)(2)(B)(ii).

As the undersigned explained in the Order directing Plaintiff to amend her first complaint, a review of the sufficiency of Plaintiff's complaint for purposes of § 1915(e)(2)(B)(ii) begins with analysis of whether Plaintiff's complaint complies with the pleading standard applicable to all civil complaints in federal courts. *See Thompson v. Rundle*, 393 F. App'x 675, 678 (11th Cir. 2010) (citations omitted) ("A dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal under Federal Rule of Civil Procedure 12(b)(6). Dismissal for failure to state a claim is appropriate when the facts as pleaded do not state a claim for relief that is 'plausible' on its face."). Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff file a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In general, then, a pleading is insufficient if it offers only mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders

---

Instead, Plaintiff spends a considerable portion of these paragraphs describing her damages calculations and various hardships she alleges she has endured because of Defendant's actions. *See* Am. Compl. (Doc. 6) at 2-3.

'naked assertion[s]' devoid of 'further factual enhancement.'"). Thus, in order to satisfy Rule 8(a), Plaintiff's complaint "'must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "A claim is factually plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful. Factual allegations that are 'merely consistent with' a defendant's liability,' however, are not facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

As a general matter, "[i]n the case of a *pro se* action . . . the court should construe the complaint more liberally than it would formal pleadings drafted by lawyers." *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). However, although district courts must apply a "less stringent standard" to the pleadings submitted by a pro se plaintiff, such "'leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action.'" *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)). Accordingly, Plaintiff's complaint, even if liberally construed, must minimally satisfy the dictates of Rule 8(a) of the Federal Rules of Civil Procedure in order to survive review under § 1915(e). As set out below, the undersigned concludes that Plaintiffs' complaints fail to withstand such scrutiny.

The undersigned begins with analysis of Plaintiff's claim that she was discriminated against on the basis of her race in violation of Title VII of the Civil Rights

Act of 1964.  "To state a race-discrimination claim under Title VII, a complaint need only 'provide enough factual matter (taken as true) to suggest intentional race discrimination.'"  *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015) (quoting *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008)).  Plaintiff is an African-American female.[2]  Defendant is described by Plaintiff as a "Temporary agency."  *See* Compl. (Doc. 1), Civ. No. 2:15-cv-485 (filed July 8, 2015).[3]  Although confusing and conclusory, even after the court ordered Plaintiff to amend her prior complaint, Plaintiffs' complaints appear to allege that Defendant has discriminated against her on the basis of her race because agents of Defendant allegedly "lied" to Plaintiff about the availability of accounting jobs over a period of years when she would telephone Defendant's office.  *See* Am. Compl. (Doc. 6) at 2, Civ. No. 2:15-cv-156-MHT-WC; Compl. (Doc. 1) at 2, Civ. No. 2:15-cv-485-MHT-WC.  Plaintiff does not allege that Defendant failed to hire her for any specific position, or even that Defendant, as a temporary employment agency, was responsible for final hiring decisions.  Rather, from the allegations of Plaintiff's complaint, it appears that Defendant provided its employer-clients with résumés for persons considered qualified to fill available positions and that the client-employers themselves determined whether to hire those referred by

---

[2]  Plaintiffs' complaints do not clearly allege her race.  However, a copy of Plaintiff's February 5, 2015, EEOC Charge of Discrimination is appended to Plaintiff's complaint in her second-filed action.  In that document, Plaintiff states that she is "a Black female with a disability."  *See* EEOC Charge (Doc. 1-1), Civ. No. 2:15-cv-485 (filed July 8, 2015).

[3]  Based upon Plaintiff's description of Defendant's activities, the undersigned assumes for purposes of this Recommendation that Defendant is an "employment agency" as that term is defined in relevant law.  *See* 42U.S.C. § 2000e(c) ("The term 'employment agency' means any person regularly undertaking with or without compensation to procure employees for an employer or to procure employees opportunities to work for an employer and includes an agent of such a person.").

Defendant. *See* Am. Compl. (Doc. 6) at 2 (explaining that "phone call list records" demonstrate that Defendant "sent [Plaintiff's] résumé out twice" but that "two white women got both of those jobs"); *id.* (Doc. 6-1) at 1 (stating, "I want to know how many jobs they actually sent my Resume [sic] out on.").[4]

Because Plaintiff therefore has not stated a claim against Defendant for failure to hire or employ her due to her race, Plaintiff's action may proceed under Title VII only if she has stated a plausible claim that Defendant failed or refused to refer her for employment, or otherwise discriminated against her, on the basis of her race. *See* 42 U.S.C. § 2000e-2(a)(2)(b) ("It shall be an unlawful employment practice for an employment agency to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color religion, sex, or national origin.").

Plaintiff's complaints fail to state any plausible claim that Defendant failed to refer her for employment or otherwise discriminated against her on the basis of her race. Plaintiff only alleges that every time she called Defendant she was lied to about whether there were available accounting jobs. Plaintiff does not identify any specific instance in which she called and was told there were no available accounting positions when, in fact, there were such positions available. Nor does Plaintiff allege any specific instance in

---

[4] This supposition is bolstered by one of the call log documents Plaintiff attached to her amended complaint. The document reflects calls made by Plaintiff to Defendant and includes notes taken by Defendant's agents about the content of the calls. The document indicates that one of Defendant's agents called Plaintiff on July 30, 2013, in response to a message Plaintiff had left. In that call, the agent explained to Plaintiff that Defendant sends résumés to its clients and "that the clients choose who they want to interview once they review the résumé." *See* Am. Compl. (Doc. 6-1) at 2.

which Defendant failed or refused to refer her for employment to a particular employer. Rather, Plaintiff appears to infer that this occurred because one of the records she appended to her amended complaint indicates that, in a roughly six-month period in 2013-2014, sixteen accounting jobs were filled with referrals by Defendant.  *See* Am. Compl. (Doc. 6-1) at 1.  However, there are no allegations in Plaintiffs' complaints that Plaintiff called or was lied to about the availability of any of these specific positions.[5] Without factual allegations more specific than Plaintiff's vague complaint that she was lied to every time she called Defendant, Defendant is unable to intelligibly respond to Plaintiff's allegations that she was discriminated against, and this court is unable to conclude that Plaintiff has stated a plausible claim upon which relief could be granted.

Apart from the lack of sufficiently specific, plausible allegations that Defendant deployed some unlawful employment practice against Plaintiff, Plaintiff's amended complaint makes clear that, in fact, Defendant did refer her résumé to potential employers on at least two occasions.  *See* Am. Compl. (Doc. 6) at 2 ("And also if you look at the phone call list records you can see where they sent my resume [sic] out twice . . . ."). Indeed, Plaintiff's amended complaint makes clear that on at least one occasion Defendant succeeded in locating employment for Plaintiff.  *Id.* ("I was called one time for one job by Catherine, which I never heard from her since, she told me that she had a job for me and if I wanted it.").  Given these factual allegations, which establish that Defendant actively referred Plaintiff for employment and succeeded in locating

---

[5]  Tellingly, this document also indicates that, of the sixteen accounting jobs filled with referrals from Defendant, more than half of them were filled by African-Americans like Plaintiff.

employment for her, Plaintiff's bare allegation—if indeed one should be construed from the complaints—that Defendant failed to refer her for other jobs because of her race is, without further factual adornment, simply implausible.

Even if the court assumes, despite the absence of sufficiently specific, plausible factual allegations, that Defendant actually utilized some employment practice respecting Plaintiff which would be unlawful if predicated on her race, Plaintiff has also failed to allege plausible factual allegations indicating that, in fact, any such employment practice was the product of Plaintiff's race.  Plaintiff alleges as follows: "The reason that I know it is race . . . is because, not only would they not ask my name or who I was, or even check the computer in 10 seconds that they were on the phone with me, they all would tell me that they didn't have ANY accounting jobs."  Am. Compl. (Doc. 6) at 2.  This allegation—that Defendant's agents racially discriminated against Plaintiff merely by telling her, over the telephone, that they did not have accounting jobs when they did not know her identity and, therefore, presumably, her race—strikes the undersigned as, at the least, conclusory and logically flawed, if not entirely nonsensical.  There is no allegation that Defendant referred résumés of white persons for certain positions while refusing to refer Plaintiff's résumé for those same positions because of her race.  Indeed, as discussed above, Plaintiff alleges that Defendant did refer her résumé to potential employers on at least two occasions, and that Defendant even succeeded in securing an offer of employment for Plaintiff.  Furthermore, Plaintiff's own documentation in support of her amended complaint indicates that over half of the accounting jobs filled with referrals by Defendant in a six-month period in 2013-2014 were filled by African-

8

Americans. Plaintiff simply has not pled one plausible factual allegation indicating that any adverse action about which she complains was the product of racial discrimination. Because Plaintiff has therefore failed to state any Title VII race discrimination claim for which relief could be granted, Plaintiff's complaints are due to be dismissed under § 1915(e)(2)(B).

Plaintiff also alleges that she was discriminated against on the basis of her disability. In general, the Americans with Disabilities Act "prohibits employers from discriminating against disabled employees." *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015) (citing 42 U.S.C. § 12112(a)). As the Eleventh Circuit has explained,

> [t]o state a discrimination claim under the ADA, a plaintiff must allege sufficient facts to plausibly suggest "(1) that he suffers from a disability, (2) that he is a qualified individual, and (3) that a 'covered entity' discriminated against him on account of his disability." *Cramer v. Fla.*, 117 F.3d 1258, 1264 (11th Cir. 1997)). The ADA defines "disability" to include: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also* 29 C.F.R. § 1630.2(g). For purposes of the ADA, a qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions" of her employment. 42 U.S.C. § 12111(8).

*Id.* An employment agency is a "covered entity" for purposes of the ADA. *See* 42 U.S.C. § 12111(2).[6]

---

[6] The ADA utilizes, indeed it relies upon, the definition of "employment agency" that is applied in Title VII cases and which was set out earlier in this Recommendation. *See* 42 U.S.C. § 12111(7).

9

As best the undersigned can tell, Plaintiff's disability is described as "End Stage Renal Failure disease," for which she regularly receives dialysis. Am. Compl. (Doc. 6) at 2. Plaintiff alleges that an agent of Defendant, an employee named Catherine, "was the only one in that office that knew" of this disability. *Id.* However, the complaint is devoid of any plausible factual allegations linking this alleged disability with any alleged adverse employment action or other discriminatory practice. The closest any of Plaintiff's complaints come to doing so is found in the handwritten notes on records Plaintiff attached to her amended complaint. Plaintiff alleges as follows:

> I took my typing test right after surgery on my arm and I told Catherine right then that I was going to have to come back and do it again. They would not let me. Every time I asked, I was told that I didn't need to. The test had 17 errors on it. Catherine was my recruiter and she knew I had a disability. (It was strictly race for everyone else.).

Am. Compl. (Doc. 6-1) at 2.

This allegation is insufficient to state a claim upon which relief could be granted for unlawful employment discrimination on the basis of disability. Plaintiff has not alleged any disability related to her arm. That is, there are no allegations establishing that Plaintiff's arm surgery resulted in a "disability" as that term is defined in the ADA and set out previously. Rather, Plaintiff has alleged that her disability is "End Stage Renal Failure" and also that Catherine was the only person aware of such disability. There are no factual allegations indicating that Catherine knew or should have known that Plaintiff's kidney disease was connected with her performance on the typing test, such that Defendant's purported refusal to allow her to retake the test constitutes discrimination in violation of the ADA. Nor are there any allegations that other agents of

10

Defendant, who presumably comprise the "they" Plaintiff alleges denied her the opportunity to retake the typing test, even knew of Plaintiff's alleged disability. Moreover, Plaintiff has not alleged sufficient plausible facts showing that the purported refusal to permit her to retake a typing test constitutes actionable discrimination. There are no factual allegations indicating that, indeed, Plaintiff needed to retake the test despite Defendant's assurances that she did not. Plaintiff does not allege that Defendant refused to refer her for employment on the basis of her typing test or that she was denied employment for that reason. Accordingly, Plaintiff has failed to state a claim for employment discrimination in violation of the ADA.

Stripped of the conceit that Plaintiff's complaints describe actionable race or disability discrimination, Plaintiff's real grievances with Defendant are brought into greater relief. Plaintiff finds it implausible that she was not offered more accounting jobs because she believes that she is "more than qualified for pretty much every single accounting job that they had." Am. Compl. (Doc. 6) at 2. However, as discussed previously, Plaintiff's allegations make clear that it is not Defendant, but Defendant's clients, who make final hiring decisions. As such, and without some plausible allegation that Defendant was refusing to refer Plaintiff for employment opportunities due to her race or disability, the fact that Plaintiff did not receive a satisfactory number of offers of employment is not actionable as to Defendant. It is also apparent that Plaintiff is aggrieved by what she perceives as the curt, dismissive, or rude attitude of Defendant's agents when she would call. *See id.* ("She [Catherine] would not stay on the phone with me more than 20 seconds. When I would call she would always say 'NO' that they didn't

11

have any accounting postings.  She would tell me to call other temp agencies and try to hurry up and get me off the phone."); *see also* Compl. (Doc. 1) at 2, Civ. No. 2:15-cv-485-MHT-WC ("Catherine would not stay on the phone with me over 1 minute, she would start hurrying up and trying to get off the phone and would tell me to just call the availability line, even after I told her to just keep me on the availability list because other temp agencies had not called me in the past 6 years either.").  However, even if taken as true, Plaintiff's allegations about the less than exemplary phone etiquette of Defendant's agents do not suffice to state a claim upon which relief could be granted for racial or disability discrimination on the part of Defendant.  *See, e.g.*, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998) (explaining that Title VII is not intended as a "general civility code for the American workplace").

    Plaintiff's grievances with Defendant, even if not viable as legal claims, are made sharper due to the numerous hardships, including health issues and financial struggles, she has endured in the years in which she has been frustrated with not receiving the quantity and quality of employment offers for which she believes she is qualified.  *See* Am. Compl. (Doc. 6) at 2-3.  However, Plaintiff's hardships do not afford her leave to baldly accuse Defendant of invidious racial or disability discrimination.  To proceed with such claims, she must plead sufficient, plausible factual allegations indicating that Defendant engaged in some unlawful employment practice because of her race and/or disability.  As set forth above, despite having provided Plaintiff with the opportunity to

amend her patently deficient first-in-time complaint, Plaintiff still has failed to provide such allegations.[7]

Accordingly, for all of the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Plaintiff's complaints in the two actions captioned above be DISMISSED prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), because Plaintiff has failed to state any claim on which relief may be granted. The Magistrate Judge further RECOMMENDS that the pleading styled "Title of Motion: To add" (Doc. 7 in 2:15-cv-156), in which Plaintiff appears to seek leave to "add" a second completed EEOC charge—the same charge forming the basis of the complaint filed in Plaintiff's second case against Defendant—to the record of her first-filed case, be DENIED as moot in view of the consolidation of the two cases. Plaintiff's motions for leave to proceed *in forma pauperis* in the two subject actions are GRANTED. Further, it is

---

[7]  Because the complaint in Plaintiff's second case against Defendant mirrors the substance of her amended complaint in the lead case, the undersigned believes it would be futile to again ask Plaintiff to amend that later-filed complaint. *See, e.g., Cornelius v. Bank of America, NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) ("While a pro se litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile.") The undersigned believes Plaintiff has been afforded sufficient opportunity to clearly articulate her claims against Defendant and, having closely reviewed the amended complaint in the lead case, believes she has endeavored to do so to the best of her ability. As such, the undersigned is recommending dismissal of the second complaint without further amendment.

Furthermore, the opportunity to amend ordinarily contemplated by governing case law, *see Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002)), is not inconsistent with the undersigned's recommendation of dismissal. Plaintiff will be permitted to file objections to the findings set forth in this recommendation, and thus is afforded the requisite opportunity to be heard about her the deficiencies of the complaint in her second action prior to any dismissal of the complaint.

ORDERED that Plaintiff is DIRECTED to file any objections to the said Recommendation **on or before January 19, 2016**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*). Plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 4th day of January, 2016.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE